Kevin JONES, Petitioner–Appellee,

v.

Carl D. BERRY, Superintendent of Woodbourne Correctional Facility, Hon. Robert Abrams, Attorney General of the State of New York, and Denis Dillon, District Attorney of the County of Nassau, Respondents–Appellants.

No. 1295, Docket 89–2126.

United States Court of Appeals, Second Circuit.

Argued June 9, 1989.

Decided July 24, 1989.

Jethro M. Eisenstein, New York City (Profeta & Eisenstein, on the brief), for petitioner-appellee.

Lawrence J. Schwarz, Asst. Dist. Atty., Mineola, N.Y. (Denis Dillon, Dist. Atty., Nassau County, Bruce E. Whitney, Asst. Dist. Atty., Mineola, N.Y., on the brief), for respondents-appellants.

Before: FEINBERG and KEARSE, Circuit Judges, and BARTELS, District Judge.*

KEARSE, Circuit Judge:

Respondents Carl D. Berry, Superintendent of New York State's Woodbourne Correctional Facility, *et al.* (collectively the "State"), appeal from a final judgment of the United States District Court for the Eastern District of New York, I. Leo Glasser, *Judge*, granting the petition of Kevin Jones, a New York State prisoner, under 28 U.S.C. § 2254 (1982), for a writ of habeas corpus on the ground that the state trial

* Honorable John R. Bartels, Senior Judge of the United States District Court for the Eastern Dis-   trict of New York, sitting by designation.

court denied Jones his constitutional right to confrontation when it limited his cross-examination of the key prosecution witness. For the reasons below, we vacate the judgment and remand for consideration of the other grounds alleged in the petition.

## I.  BACKGROUND

Jones was convicted in Nassau County Court in 1983 of robbery in the first degree and of resisting arrest. The sole witness to the robbery was Edward Thomas.

### A. *The Robbery and the Arrest*

Thomas testified that on the night of January 2, 1982, Jones entered the office of a gasoline service station at which Thomas was, at the time, the lone attendant. Jones confronted Thomas with a knife and said, "I know you and you know me, this ain't [m]y bag but I have got to have the money." Thomas responded that he had no money and it would not be worth Jones's while to rob him.

At that moment, a customer drove into the station. Thomas went to serve the customer; Jones followed him and stood three-to-four feet away with his knife concealed while Thomas sold the customer $6 worth of gas. When the customer left, Jones followed Thomas back into the office. Thomas opened the cash register drawer, and Jones took a total of approximately $150 from the drawer, plus the $6 Thomas had received from the customer. Jones left the gas station on foot, and Thomas called the police. Thomas told the police officers he had often seen the robber around the neighborhood but did not know his name.

The officers' suspicions soon focused on Jones. On January 7, 1982, two detectives attempted to arrest him. While they were patting him down, Jones briefly escaped. Shortly thereafter, he was recaptured. The proceeds from the robbery and the knife were never recovered. Jones was charged with first-degree robbery and resisting arrest.

### B. *The Examination of Thomas at Trial*

At trial, Jones's attorney started his cross-examination of Thomas with questions focusing principally on prior criminal acts by Thomas. The attorney then began asking Thomas about his relationship with Jones and his family, and the following occurred:

Q: Now, how long have you lived in the neighborhood you are residing in at the present time?

A: Since 1975.

Q: And when did you first see the defendant, what year, that you can recall?

A: I don't remember what year. I seen him for several years.

Q: Well, would you say ten years ago?

A: I don't think so.

Q: Do you know any other members of his family?

A: I know his father.

Q: You know what his father does?

MR. HALEY [the prosecutor]: I object, your Honor.

THE COURT: Sustained.

Q: Are you a member of his father's church?

MR. HALEY: Oh—

THE COURT: Sustained. Strike it and the jury will disregard.

Let's talk about this case, Counsel, and no extraneous matters.

MR. HORAN [Jones's attorney]: Your Honor, I—

THE COURT: No, I don't want to hear another word.

MR. HORAN: All right.

Jones's attorney then cross-examined Thomas at some length about the events surrounding the robbery. He did not return to the matter of a relationship between Thomas and Jones's father.

On redirect examination, a question by the prosecutor as to any bias on the part of Thomas led to the following colloquy:

Q: Finally, Mr. Thomas, on January 2nd or prior to January 2nd, 1982, what, if any, animosity or dislike did you have for Kevin Jones?

MR. HORAN: Objection. Irrelevant.

THE COURT: Counsel,—

MR. HALEY: What, if any, was not a leading question.

THE COURT: Nothing to do with that, but I don't believe there was any such question or nothing like that on cross examination concerning that point.

MR. HALEY: Right.

THE COURT: The objection is sustained. Jones's attorney did not pursue the issue of bias on recross-examination.

The jury convicted Jones on both counts. He was sentenced to an indeterminate term of imprisonment of seven and one half to 15 years on the robbery count and to a concurrent term of one year's imprisonment on the resisting arrest count.

On appeal to the Appellate Division, Jones argued, *inter alia*, that the trial court's curtailment of his cross-examination of Thomas denied him his constitutional rights to confrontation and a fair trial. He stated that "[i]t was the Defense's contention that there was 'bad blood' between Edward Thomas and the Defendant's father; however the trial court does not allow the Defendant to Cross–Examine as to this hostility that Mr. Thomas may have felt toward Defendant and Defendant's father.... [T]he trial court does not even give the Defense Counsel a chance for an Offer Of Proof...." The Appellate Division affirmed, stating, in pertinent part, as follows:

> The defendant ... asserts reversible error in the trial court's refusal to allow him to question Thomas regarding Thomas' alleged hostility toward the defendant's father. However, in light of the sustained attack on Thomas' credibility, it cannot be said that there was a "reasonable possibility" that the exclusion of this evidence affected the outcome of the trial (*see, People v. Malizia*, 62 NY2d 755, 757, [476 N.Y.S.2d 825, 465 N.E.2d 364], *cert. denied* 469 US 932 [105 S.Ct. 327, 83 L.Ed.2d 264]; *People v. Crimmins*, 36 NY2d 230, 237 [367 N.Y.S.2d 213, 326 N.E.2d 787]). Finally, the record discloses that the defendant's guilt was proven beyond a reasonable doubt.

*People v. Jones*, 125 A.D.2d 414, 414–15, 509 N.Y.S.2d 133, 133–34 (2d Dept.1986). The New York Court of Appeals denied leave to appeal. *People v. Jones*, 70 N.Y. 2d 649, 518 N.Y.S.2d 1042, 512 N.E.2d 568 (1987).

C. *The Present Proceeding and the Decision Below*

Jones filed the present *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that the trial court violated his Sixth Amendment right of confrontation when it curtailed the cross-examination of Thomas; that his guilt had not been proven beyond a reasonable doubt; and that the trial court erred in commenting on Thomas's veracity. The district court granted the petition on the first ground, without reaching the merits of Jones's other two claims. In a Memorandum and Order dated March 6, 1989, the court reasoned that

> the trial judge's insistence that he would not "hear another word" unduly prohibited inquiry as to any bias or hostility the sole government witness may have had towards the petitioner's father and towards petitioner, leaving the jury to evaluate that witness' credibility and disposition towards the petitioner on the basis of incomplete facts in violation of plaintiff's rights under the confrontation clause.

The court concluded that the error was not harmless since, *inter alia*, the prosecution's case rested heavily on Thomas's testimony and the excluded evidence was not cumulative because there was no other evidence from which the jury could have inferred that Thomas was biased. Accordingly, on April 10, 1989, the district court ordered the State either to release Jones or to give him a new trial within 60 days.

The State has appealed. The order of the district court has been stayed pending resolution of the appeal.

## II. DISCUSSION

On appeal, the State contends that, in light of Jones's failure to make any offer of proof, the trial court's curtailment of the

inquiry into Thomas's relationship with Jones's father was not error, and that if it was error, the error was harmless. These contentions require us to examine the intertwined questions of the right of a defendant in a criminal case to cross-examine the witnesses against him, the authority of the trial court to control such cross-examination, the obligation of the defendant to inform the trial court of the nature of the evidence he wishes to introduce, and the defendant's obligation to make a record upon which the trial errors he asserts may fairly be reviewed. We conclude that on the record before us, the asserted error of the trial court in curtailing Jones's cross-examination of Thomas, if it was error, was harmless.

The Confrontation Clause of the Sixth Amendment, which through the Fourteenth Amendment applies to the states, *see Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), guarantees the defendant in a criminal prosecution the right to confront the witnesses against him. This "means more than being allowed to confront the witness physically," for " '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.'* " *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed.1940) (emphasis in original)); *see Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 1434, 89 L.Ed.2d 674 (1986).

■ Principal subjects for cross-examination include the motivation of the witness in testifying, including possible self-interest and any bias or prejudice against the defendant. *Davis v. Alaska,* 415 U.S. at 316–17, 94 S.Ct. at 1110–11; *see also Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959) (cross-examination is especially important where the principal evidence "consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy"). Thus, the Supreme Court has long held in criminal cases that "a trial court must allow some cross-examination of a witness to show bias." *United States v. Abel,* 469 U.S. 45, 50, 105 S.Ct. 465, 468, 83 L.Ed.2d 450 (1984) (citing *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931)); *see Olden v. Kentucky,* —— U.S. ——, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (per curiam); *Delaware v. Van Arsdall,* 475 U.S. at 677, 679, 106 S.Ct. at 1434, 1435; (complete bar on examination into bias impermissibly denies jury information "central to assessing [the witness's] reliability"); *see also United States v. Pedroza,* 750 F.2d 187, 195–96 (2d Cir. 1984).

Nonetheless, the Confrontation Clause does not prohibit the trial judge from setting any limits whatever on the cross-examination of a prosecution witness for potential bias. The court retains "wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, ... interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435; *see United States v. Rahme,* 813 F.2d 31, 37 (2d Cir.1987) (scope and extent of cross-examination are within sound discretion of trial court); *United States v. Pedroza,* 750 F.2d at 195 (same).

■ Since the trial court has discretion to limit cross-examination, a party whose prospective questioning is threatened with curtailment should make all reasonable efforts to alert the court to the relevance and importance of the proposed questions. Unless clearly barred by the trial court, the party should make an offer of proof on the record. Such an offer has the twofold benefit of (a) allowing the trial court to make its decision on a fully informed basis and (b) allowing the reviewing court to make a reasoned evaluation of the impact of the trial court's decision. The latter consideration is of especial importance where, as here, an erroneous ruling must be assessed in light of its prejudicial effect.

■ When a reviewing court concludes that the trial judge has improperly curtailed cross-examination, in violation of the defendant's confrontation rights, it should

not reverse automatically but should instead apply harmless-error analysis. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438. We conclude that the record in the present case indicates that the error, if any, was harmless.

Our equivocation as to whether the trial court's curtailment of the cross-examination of Thomas was error results from the failure of Jones's attorney to make an offer of proof as to what the forbidden line of examination would have shown. The first question about Jones's family has, at least on a reading of the transcript, an air of randomness about it ("Do you know any other members of his family?"), and at first blush, the question of whether the witness attended Jones's father's church appears to be irrelevant. Though Jones's attorney perhaps attempted to explain its relevance (beginning, "Your Honor, I—" before the court cut him off), the record does not indicate that he made any further attempt to inform the court as to the aim of the precluded questions. While the trial court's statement that it "d[id]n't want to hear another word" made it virtually impossible, without risking contempt, for Jones's attorney to argue the point at that moment, it is hardly clear that he was barred from asking to approach the bench or from later attempting an offer of proof outside the hearing of the jury. Since he did not do so, the record does not clearly indicate that he was attempting to show bias. It is evident that the trial court did not view the truncated questioning as relating to bias; it sustained Jones's objection to the prosecutor's redirect examination question on bias on the basis that there was "nothing like that" on cross-examination.

Moreover, the ground of Jones's objection to the bias question posed to Thomas by the prosecutor during redirect examination could only have further obscured from the trial court any thought that the questions excluded on cross-examination had been aimed at a showing of bias. Though the court barred the prosecutor's question because it went beyond the scope of cross-examination, Jones's objection was not on that ground. Rather, the objection was that the question called for information that was "[i]rrelevant." Thus, it is at least arguable that the trial court did not commit error in refusing to permit Jones's questions because it, unlike the reviewing courts, was never apprised that those questions related to bias.

■ We assume for present purposes, however, that the trial court's curtailment was error, since the Appellate Division appears to have affirmed on the ground of harmless error. On the record before us, we too are persuaded that the error was harmless. Several factors lead us to this conclusion.

First, since there was never an offer of proof in the trial court and since in his direct appeal Jones made only a conclusory assertion that "there was 'bad blood'" between Thomas and Jones's father and that Thomas "may" have felt hostility toward Jones and his father, we have no way of knowing what facts the curtailed cross-examination was meant to elicit. Further, no record has been made in any court as to any factual basis for Thomas's hypothetical hostility. Thus, the present case stands in sharp contrast to those cases in which the trial record made clear what facts the defendant had sought to elicit on cross-examination. *See, e.g., Davis v. Alaska,* 415 U.S. at 310–11, 94 S.Ct. at 1107–08 (prior record of witness as a youthful offender); *Delaware v. Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435 ("an event that the State conceded had taken place"); *Santiago v. Vincent,* 423 F.Supp. 103, 107 (S.D.N.Y. 1976) (official suspicion of witness's brother, which had recently been brought out in *Wade* hearing before the same judge), *aff'd without op.,* 553 F.2d 94 *and* 573 F.2d 1295 (2d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *see also Dorsey v. Parke,* 872 F.2d 163, 168 (6th Cir.1989) (no Confrontation Clause violation found where "the record suggest[ed] no facts or information ... which continued

questioning would have or might have exposed"). In the absence of any representation as to what facts might have been brought out had cross-examination not been curtailed, we are hard-pressed to conclude that the unpermitted questions had damaging potential.

Second, there is no apparent reason for the record to have been left so barren as to the factual basis for the bias hypothesis, if there was such a basis. Though "[c]ounsel often cannot know in advance what pertinent facts may be elicited on cross-examination," *Alford v. United States,* 282 U.S. at 692, 51 S.Ct. at 219, that hardly seems the situation here, for any facts supporting the hypothesis that Thomas was biased against Jones as a result of some prior relationship between Thomas and Jones's father should have been available to Jones through his father. Thus, notwithstanding the fact that Thomas was not permitted to testify on the subject, it seems likely that some showing as to the factual basis for and materiality of the foreclosed cross-examination could have been made to either the trial court or the reviewing courts.

Third, Jones would undoubtedly have been permitted to bring out any bias on the part of Thomas on recross-examination if the prosecutor's bias question on redirect examination had been answered. Jones's attorney, however, successfully objected to that question, and as a result he could not pursue the matter on recross. If Jones's counsel knew of any facts supporting an inference of bias on the part of Thomas, his failure to take advantage of the door opened by the prosecutor's bias question on redirect examination is inexplicable, and his objection on the ground of *relevance* is incomprehensible. In light of the tactics of Jones's attorney at trial, the theory that there was "bad blood" causing Thomas to be biased against Jones seems something of an appellate afterthought.

In sum, in light of Jones's failure to make an offer of proof as to any underlying facts that might have suggested bias, together with his assertion at trial that the prosecutor's bias question was irrelevant, we cannot conclude that there was a reasonable possibility that if the trial court had not curtailed the questioning of Thomas the outcome of the trial might have been different. On the present record, we are persuaded that the asserted error of the trial court was, beyond a reasonable doubt, harmless.

### CONCLUSION

The judgment of the district court granting the writ on Confrontation Clause grounds is vacated. The matter is remanded to the district court for consideration of the remaining claims asserted in the petition.