UNITED STATES of America,
Plaintiff–Appellee,

v.

Miles Davis SAUNDERS, Defendant–Appellant.

No. 91–3841.

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1992.

Decided Sept. 3, 1992.

John W. Vaudreuil, Asst. U.S. Atty. (argued), Office of U.S. Atty., Madison, Wis., for plaintiff-appellee.

T. Christopher Kelly, Madison, Wis. (argued), for defendant-appellant.

Before FLAUM and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

A jury convicted Miles Saunders of conspiring to possess cocaine with the intent to distribute and of possessing cocaine with the intent to distribute. Saunders contends he is entitled to a new trial because the district court violated his sixth amendment right to confront witnesses in limiting the scope of cross-examination. He also challenges the sufficiency of the evidence supporting his conviction, the jury instructions, and the constitutionality of §§ 3E1.1 and 4B1.1 of the Sentencing Guidelines. We affirm.

## I.

In August 1990, while frequenting a bar in Minneapolis, Saunders met a man named

Greg James, who was in town from Chicago visiting friends. Several weeks later, after running into each other again, Saunders agreed to loan James roughly $200 to fix his car. They kept in touch, and in April 1991, got together at a shopping mall in Chicago, along with a friend of Saunders named Gina. Shortly thereafter, Saunders called James, offering to forgive the car loan, and give him some money as well, if James would deliver a package to him in Minneapolis. James agreed to the deal, and Saunders gave James his pager number and explained that Gina would make arrangements to deliver the package to him in Chicago. On the morning of May 1, 1991, Gina called James and they agreed to meet at a Popeye's restaurant in Harvey, Illinois. After borrowing a car—apparently, his was still on the fritz—from a friend named Ronnie Anderson, James received the package from Gina, put it in a dog food bag in the trunk of Anderson's car, and left for Minneapolis.

Later that day, Wisconsin state trooper Leslie Block stopped James for tailgating. After giving him a warning ticket, the trooper explained the state's drug interdiction program and sought permission to search the car. A consent search of the trunk revealed 13 baggies of what appeared to be cocaine, and Block arrested James. Subsequent tests demonstrated that each baggie held one ounce of pure cocaine, with a total street value of $23,000. James later told investigators that he was transporting the cocaine from Chicago to Minneapolis for an individual known to him as "L.A.," and that he had been given the drugs by a woman named Gina. After James agreed to cooperate with authorities, Special Agent David Matthews of the Wisconsin Department of Justice devised a plan in which James would travel to the Wisconsin Dells under his supervision, place a call to "L.A.'s" pager number, and arrange a delivery. James would tell "L.A." that he had the drugs, but that he needed a ride because his car had broken down.

Early the next morning, James placed several calls to the pager number as planned. At 12:50 a.m., Saunders returned the call to a pay phone at a Perkins Restaurant. James told Saunders his car had broken down and Saunders agreed to come pick up James and the package, telling James to get a motel room and to relay the room number to his pager. James checked into room 226 at a Super 8 Motel in the Wisconsin Dells and paged Saunders as planned. Saunders returned the call, acknowledging that he had received the room number. Finally, at 7:15 a.m., Saunders called back to say that he was on his way.

Saunders arrived at the motel at 12:35 p.m., going directly to room 226, which agents had fitted with a microphone. He was accompanied by two friends, one of whom, Sharon Ford, also knew Saunders as "L.A." and also had his pager number. James asked Saunders if he knew how much "stuff" was in the bag; Saunders responded that he did not, and asked nothing else about the "stuff." After about five minutes, all of the individuals in the room left, at which time they were arrested by law enforcement agents. In an interview with Matthews immediately following his arrest, Saunders denied knowing James, making any calls to James, receiving any pager calls within the last 24 hours, or having the nickname "L.A." When asked why he came to the Wisconsin Dells and went directly to room 226 at the motel, he offered no explanation.

One week later, a federal grand jury returned a one-count indictment charging Saunders with the conspiracy count. The indictment mentioned James as a co-conspirator but not as a defendant. Later in May, the grand jury returned a superseding indictment adding James as a defendant and co-conspirator, and charging both Saunders and James with a second count for possession with intent to distribute. The government later discovered that Saunders had a 1990 felony conviction for possessing cocaine with intent to distribute and served notice of its plan to seek an enhanced 30–year prison term and $2 million fine based on that prior conviction.

Saunders filed a motion to sever his trial from James,' which the court granted without opposition from the government.

James subsequently entered into a plea agreement with the government and received a 16–month prison sentence which is not at issue in this appeal. After a two-day trial, a jury found Saunders guilty on both counts. Saunders moved for a judgment of acquittal notwithstanding the verdict challenging the sufficiency of the evidence and claiming James' testimony against him was "too incredible to justify guilty verdicts." The district court denied the motion.

During the presentence investigation, Saunders confessed to the crime. However, he maintained that he was not the sole intended recipient of the 13–ounce shipment and was supposed to split it with two other individuals in Minneapolis. He also asserted that it was Ronnie Anderson who was responsible for the shipment and who had asked James to transport the cocaine to Minneapolis. Saunders explained that after he sold his share of the delivery (4 ounces), he was supposed to keep $1,500 and deliver the remaining proceeds to Anderson. The presentence report recommended a two-level reduction based on this acceptance of responsibility. The district court declined to grant the reduction, and sentenced Saunders to 262 months imprisonment on each count, to be served concurrently, followed by a six-year term of supervised release. This appeal followed.

## II.

■ Saunders first maintains that the district court violated his sixth amendment right to confront witnesses by limiting the scope of his cross-examination of Trooper Block. *See Chambers v. Mississippi,* 410 U.S. 284, 294–95, 93 S.Ct. 1038, 1045–46, 35 L.Ed.2d 297 (1973) (right to cross-examine essential procedural safeguard to the fact-finding process); *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931) (right to explore relevant facts on cross-examination essential to a fair trial). At trial, the government objected when Saunders asked Block on cross-examination if he had found marijuana seeds inside the car after stopping James. The district court sustained the objection on relevance grounds, and Saunders claims

this ruling thwarted his principal theory of defense.

According to that theory, James actually was transporting the drugs for Anderson, and trying to protect Anderson at trial by attributing ownership of the drugs to Saunders. Saunders maintains that evidence regarding the marijuana seeds was relevant under Fed.R.Evid. 401 because it buttressed his defense theory in two ways: first, evidence suggesting that Anderson's car had been used in the past to transport drugs would have impeached James' claim that Anderson knew nothing of his intent to transport drugs when loaning him the car. Second, it would have strengthened the inference that the cocaine found in that car belonged to Anderson, rather than Saunders.

■ A trial court has broad discretion in assessing the admissibility of evidence, and we may reverse its rulings only if the court abused its discretion. *United States v. Abayomi,* 820 F.2d 902, 908 (7th Cir.), *cert. denied,* 484 U.S. 866, 108 S.Ct. 189, 98 L.Ed.2d 142 (1987). However, if, as Saunders suggests, the district court's ruling implicates his constitutional rights, we review the ruling *de novo. Id.* at 909. The confrontation clause secures the right to cross-examine witnesses, but does not prohibit reasonable limits on the cross-examination of a prosecution witness. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Chambers,* 410 U.S. at 294–95, 93 S.Ct. at 1045–46; *Jones v. Berry,* 880 F.2d 670, 673 (2d Cir. 1989). Accordingly, "courts have striven to distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." *Dorsey v. Parke,* 872 F.2d 163, 166 (6th Cir.) (citations omitted), *cert. denied,* 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989). Beyond certain essential areas of cross-examination, such as those involving key witnesses or issues, the right to cross-examine is subject to limits imposed by the trial court in the exercise of its discretion. *Id.* Here, the district court minimally curtailed cross-examination on one peripheral issue, and

thus made a straightforward evidentiary ruling that we review for abuse of discretion. *Abayomi*, 820 F.2d at 909; *United States v. Jungles*, 903 F.2d 468, 478 (7th Cir.1990).

We conclude that the district court did not abuse its discretion in preventing Saunders from probing Block about the marijuana seeds. The charges in this case focused on the shipment and delivery of cocaine between James and Saunders, and not on the source of the cocaine in Chicago. The marijuana seeds were certainly not relevant to the government's case and, at best, only tangentially related to Saunders' defense theory. First, the mere presence of marijuana seeds in Anderson's car does not necessarily support an inference that he owned the cocaine at issue or that he even knew James was carrying cocaine on May 1. Second, even if the marijuana seeds support such an inference, this does not obviate the critical charge against Saunders: receipt of the cocaine in Wisconsin.

Even if the district court erred in excluding this evidence because it cast some doubt on James' veracity, the error was harmless. *United States v. Norwood*, 798 F.2d 1094, 1098 (7th Cir.), *cert. denied*, 479 U.S. 1011, 107 S.Ct. 656, 93 L.Ed.2d 711 (1986). We will overturn a conviction on evidentiary grounds only if the erroneous ruling had a "substantial influence over the jury." *United States v. Fairman*, 707 F.2d 936, 941 n. 5 (7th Cir.1983). The omitted evidence, even if relevant, fell short of that standard here. With the exception of the marijuana seed evidence, Saunders was not limited in any way in arguing that he was the fall guy for James and Anderson, and he fully developed this theory at trial in cross-examining James—the government's key witness and principle accuser—at length and without any additional limitation.

### III.

Saunders next points to three weaknesses in the government's case which he claims make the evidence insufficient to support his conviction: first, that James' testimony was so peppered with inconsist-

encies that it cannot support a conviction, second, that James' testimony was uncorroborated by any other witnesses, and third, that the evidence did not establish that Saunders intended to distribute the cocaine.

We must uphold the conviction if the evidence, viewed in the light most favorable to the government, establishes that any rationale trier of fact could have found Saunders guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Harty*, 930 F.2d 1257, 1265 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 262, 116 L.Ed.2d 215 (1991). In challenging the sufficiency of the evidence, Saunders bears a heavy burden, particularly when the facts turn upon credibility determinations. *United States v. Buggs*, 904 F.2d 1070, 1074 (7th Cir.1990). "Credibility is for the jury, not this Court, to determine." *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir.1990). We must accept the evidence unless it is contrary to the laws of nature, *Harty*, 930 F.2d at 1266, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it. *United States v. Cardona–Rivera*, 904 F.2d 1149, 1152 (7th Cir.1990).

Here, the evidence was not inherently unbelievable or improbable. Although James' testimony on direct and cross-examination did contain some inconsistencies—which, we note, defense counsel called to the jury's attention—the jury chose to believe James nonetheless. Its decision to do so was not unreasonable because the inconsistencies were arguably tangential ones that did not relate to the core events surrounding the crime. Although James wavered on the question of who introduced him to Saunders, the dates and durations of trips to Minneapolis, and other surrounding details, he consistently related the same facts when it came to the cocaine conspiracy itself. Moreover, his story at trial meshed with his confession to law enforcement officers immediately after his arrest. The jury heard and rejected Saunders' claim that James' testimony was

"wildly improbable," and we are not at liberty to second-guess that determination.

■ Saunders also asserts that his conviction cannot stand because the government's case rested solely on the uncorroborated testimony of his co-conspirator, in violation of the teachings of *United States v. Martinez de Ortiz*, 907 F.2d 629, 638 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 684, 112 L.Ed.2d 676 (1991), and *United States v. Thompson,* 944 F.2d 1331, 1341 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992). We disagree. In both *Martinez de Ortiz* and *Thompson,* we reserved the question whether a conspiracy conviction based solely on the *out-of-court* statements of an alleged co-conspirator could sustain a guilty verdict. That unanswered question is not at issue here because Saunders' conviction rests on the *in-court* testimony of his co-conspirator regarding Saunders' involvement in the conspiracy. "Co-conspirator testimony about the words and deeds of a defendant are not hearsay; the words and deeds of the defendant, while themselves out-of-court statements, are admissions, and because the testimony is offered in court, the statements of the co-conspirator are not hearsay either." *Thompson,* 944 F.2d at 1341. Moreover, even had Saunders' conviction rested solely on the uncorroborated testimony of an "admitted liar, convicted felon, large scale drug dealing, paid government informant," the jury is still entitled to credit that testimony despite those character flaws. *United States v. Beverly,* 913 F.2d 337 (7th Cir.1990) (quoting *United States v. Molinaro,* 877 F.2d 1341, 1347 (7th Cir.1989)), *cert. denied,* — U.S. —, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991). Finally, while Saunders' involvement in the conspiracy may not have been directly corroborated by other witnesses, it was supported by additional evidence implicating him in the crime, most notably getting caught red-handed at the Super 8 motel in Wisconsin.

■ Saunders last evidentiary claim is that the government showed only a buyer-seller relationship between Saunders and some unspecified individual in Chicago and, consequently, failed to establish either the existence of a conspiracy to distribute cocaine or an intent to distribute cocaine. These contentions lack merit. For one, Saunders never raised a buyer-seller defense theory at trial, nor did he request a buyer-seller jury instruction. *See United States v. Briscoe,* 896 F.2d 1476, 1514–15 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990); *United States v. Douglas,* 818 F.2d 1317, 1321 (7th Cir.1987), *cert. denied,* 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989); *cf. United States v. Townsend,* 924 F.2d 1385, 1415 (7th Cir.1991) (denying buyer-seller jury instruction where evidence suggested conspiracy to distribute). That aside, the facts were sufficient to establish both a conspiracy to distribute and an intent to distribute. *Id.* at 1400. The amount of cocaine (13 ounces) and its packaging in a manner consistent with distribution (13 individual one-ounce baggies) supports an inference of an intent to distribute. *United States v. Franklin,* 728 F.2d 994, 998–1000 (8th Cir. 1984). Separating the cocaine into 13 one-ounce packets does not seem the sort of packaging one would bother with if the cocaine was for personal consumption. Further, the purity of the cocaine, along with its uncut value ($23,000), also supports an inference of intent to distribute. *United States v. Calvo,* 865 F.2d 823, 827 (7th Cir.1988), *cert. denied,* 490 U.S. 1023, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989). Finally, James delivered the drugs from Chicago to Wisconsin without any payments changing hands. As law enforcement agents testified, this manner of "fronting" cocaine on credit is a common practice in drug distribution networks. All of this evidence, taken in the light most favorable to the government, supports the existence of both a conspiracy to distribute and an intent to distribute.

## IV.

Saunders next maintains his conviction should be reversed because the jury instructions failed to provide the jury with (1) each element of the crime of conspiracy, and (2) a complete definition of the crime of

"possession." It is well settled that jury instructions must be reviewed as a whole and that the district court's handling of the instructions will be upheld if the issues were treated fairly and adequately. *United States v. Hoffman*, 957 F.2d 296, 298 (7th Cir.1991).

Here, after reading the conspiracy count from the indictment, the district court instructed the jury, pursuant to § 5.11 of the Seventh Circuit pattern instructions, that the government must establish two elements beyond a reasonable doubt: first, that the conspiracy alleged in the indictment existed, and second, that the defendant knowingly and intentionally joined that conspiracy. The court then provided the jury with the definition of a conspiracy and instructed the jury that the government had the burden of proving the existence of a conspiracy that met that definition. Finally, the court submitted a copy of the instructions for use during deliberations.

Saunders claims the district court erred when it instructed the jury on the elements of the conspiracy without simultaneously explaining the precise sort of conspiracy they must find (*i.e.*, an agreement to distribute cocaine). Saunders acknowledges that the district court provided this information to the jury when reading the indictment just prior to delivering the challenged instruction, and again a few moments later in the instruction regarding the definition of conspiracy, but claims nonetheless that the manner of presentation by the court was reversible error. We disagree. The conspiracy instructions in this case, taken as a whole, clearly instructed the jury that in determining whether a conspiracy existed, it had to be one involving an agreement to distribute cocaine.

Saunders also alleges that the court provided the jury with an inadequate definition of "possession"; the tendered definition read:

The term "possession," as used in these instructions, includes actual possession and constructive possession. Actual possession means that a defendant knowingly had personal or physical possession of the controlled substance. Constructive possession means that a defendant had the intent and ability to exercise control over the controlled substance.

Saunders claims that the district court erred in failing to give the jury the following additional language:

To establish constructive possession of a controlled substance, the government must prove beyond a reasonable doubt that the defendant knew of the presence of the controlled substance and that he had both the power and intent to exercise dominion and control over it. Mere proximity to a controlled substance, knowledge of its existence, presence on the property where it is found, and association with a person having control of it are all insufficient to establish constructive possession.

Saunders argues that this more comprehensive statement of the law was necessary because the case against him was limited to evidence. (*i.e.*, James' testimony) of constructive possession and, thus, that there was no evidence that he had ever handled the drugs himself. Saunders maintains that, under these circumstances, it was an abuse of discretion to deny his more thorough instruction. We disagree. The court's instruction fairly and adequately stated the law of constructive possession. *See* 3 Federal Criminal Jury Instructions (Seventh Circuit) ch. 13, at 119 (1986); *United States v. Perry*, 747 F.2d 1165, 1171 (7th Cir.1984). While the additional points submitted by Saunders were perhaps appropriate for argument to the jury, it was not an abuse of discretion for the district court to streamline the instruction in an effort to aid jury comprehension.

## V.

Saunders maintains that § 3E1.1 of the Sentencing Guidelines unconstitutionally punishes a defendant who, like himself, opts to maintain his innocence and proceed to trial. Alternatively, he contends that the district court erred in declining to grant the two-level reduction for acceptance of responsibility recommended in his presentence report, and, in a related argument,

that he was at least entitled to prior notice of the district court's intent to decline that recommendation.

Section 3E1.1 provides for a two-level reduction in sentence if the defendant "clearly demonstrates a recognition and affirmative acceptance of responsibility for his criminal conduct." Here, the probation officer recommended that Saunders receive such a reduction because he confessed to his crimes during the preparation of a presentence report. After listening to arguments at the sentencing hearing, the district court declined to grant the recommended reduction, commenting:

> I really haven't seen anything that would indicate to me that he has really decided that he is responsible for very serious criminal activity.
>
> He seems to me to be playing down his role in the offense and trying to make Ronnie Anderson and Greg James look much worse. And he, unlike Greg James, did not cooperate promptly with law enforcement officers. In fact, he didn't cooperate at all.
>
> It is generally the case that a person who goes to trial is not eligible for the acceptance of responsibility. That's not a firm and fast rule. Because if it were, it would or it might have constitutional problems about exercising one's right to trial. But there have to be pretty unusual circumstances for a person who goes to trial to get the acceptance of responsibility. There has to be a showing of very sincere remorse, and I simply can't say that I have seen that with Mr. Saunders.

Tr. at 7–8 (Dec. 5, 1991).

### A.

 Saunders makes a facial challenge to § 3E1.1, claiming that its two-point reduction for acceptance of responsibility has been effectively—and unconstitutionally—made available only to defendants who plead guilty. This approach, he argues, disadvantages defendants (like himself) who wait until after trial to confess, thus penalizing them for exercising their right to a jury trial under the sixth amendment

and their right against self-incrimination under the fifth amendment. It is well established under the so-called unconstitutional conditions doctrine that a defendant may not be subjected to more severe punishment for exercising his or her constitutional right to stand trial. *See e.g., Minnesota v. Murphy,* 465 U.S. 420, 434, 104 S.Ct. 1136, 1145–46, 79 L.Ed.2d 409 (1984). Saunders argues, in essence, that § 3E1.1 violates this principle by putting defendants to a Hobson's choice: either confess before trial and receive a reduced sentence or exercise your right to a trial and forego that possibility.

Although this claim was made in *United States v. McNeal,* 900 F.2d 119, 122 (7th Cir.1990), a procedural flaw precluded us from reaching the issue and hence it remains an unsettled issue in this Circuit. We did tip our hand there, however, commenting that "[a] show of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the judge indulges a policy of penalizing those who elect to stand trial," *id.* at 122 n. 3 (citations omitted), and more recently, held that a revised Application Note to § 3E1.1 did not unconstitutionally penalize defendants for exercising their right to trial. *United States v. Guadagno,* 970 F.2d 214, 225, (7th Cir.1992). We now hold the approach embodied in § 3E1.1 does not constitute a *per se* policy of punishing those who elect to stand trial, despite the fact that leniency is more often granted to defendants who accept responsibility by pleading guilty. *Accord United States v. Paz Uribe,* 891 F.2d 396, 400 (1st Cir.1989), *cert. denied,* 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990); *United States v. Parker,* 903 F.2d 91, 106 (2d Cir.1990); *United States v. White,* 869 F.2d 822, 826 (5th Cir.) (per curiam), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *United States v. Gonzalez,* 897 F.2d 1018, 1019–21 (9th Cir.1990); *United States v. Trujillo,* 906 F.2d 1456, 1461 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990); *United States v. Henry,* 883 F.2d 1010, 1011–12 (11th Cir.1989); *but see United States v. Frierson,* 945 F.2d 650, 660 (3d Cir.1991), *cert. de-*

*nied,* —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992) ("a denied reduction in sentence is a penalty in the context of fifth amendment jurisprudence").[1] The plea bargain cases teach that "not every burden on the exercise of a constitutional right and not every encouragement to waive such a right is invalid," *Corbitt v. New Jersey,* 439 U.S. 212, 219, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978) (offer to seek a lower sentence in exchange for plea bargain not an unconstitutional burden); *see also Brady v. United States,* 397 U.S. 742, 753, 90 S.Ct. 1463, 1471–72, 25 L.Ed.2d 747 (1970) (state may extend benefit to defendant who shows acceptance of responsibility), and that principle is as valid here as it is there.

■■■ Courts have traditionally been allowed to show leniency based on an expression of remorse and § 3E1.1 merely "formalizes and clarifies that tradition of leniency." *Henry,* 883 F.2d at 1012. As long as the leniency decision is an individualized one, not based merely on the defendant's decision to go to trial, a defendant's constitutional rights are not impaired. *See United States v. Rodriguez,* 959 F.2d 193, 197 (11th Cir.1992) (vacating sentence in which trial judge expressly made acceptance of responsibility reduction contingent on giving up right to trial). Application Note 2 to § 3E1.1 makes clear that it leaves the door open to defendants who exercise their right to trial. It declares that in "rare situations" a defendant who proceeds to trial may qualify for an acceptance of responsibility reduction, particularly if the defense theory at trial rested on issues other than factual guilt (*e.g.,* the constitutionality of a criminal statute).

Here, the district court's comments at sentencing indicate it considered a variety of factors in declining to grant an acceptance of responsibility reduction and did not rely solely on Saunders' decision to go to trial. We acknowledge the difficulty a defendant faces in trying to convince the sentencing judge that he has accepted responsibility for his crime without appearing to contradict his earlier stance at trial maintaining his innocence; however, that difficulty, in itself, does not make § 3E1.1 constitutionally infirm. *Gonzalez,* 897 F.2d at 1021.

## B.

■■■ Alternatively, Saunders argues that the district court erred in declining to give him a two-level reduction for acceptance of responsibility. We review the district court's decision to deny such a sentencing recommendation under the clearly erroneous standard. *United States v. Sullivan,* 916 F.2d 417, 419 (7th Cir.1990). A decision is clearly erroneous if it lacks any support in the record or if we are left with the definite and firm conviction that a mistake has been committed. *United States v. D'Antoni,* 856 F.2d 975, 978 (7th Cir.1988). "Whether or not a defendant has accepted responsibility for his crime is a factual question.... Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area." *Sullivan,* 916 F.2d at 419 (citations omitted).

■■■ Here, the district court's decision was not clearly erroneous. The court considered Saunders' confession and deter-

---

1. A separate, but related issue is whether a defendant's right against self-incrimination is violated by making an acceptance of responsibility reduction under § 3E1.1 contingent on admitting to conduct beyond the specific conduct of the offense of conviction. *Compare Frierson,* 945 F.2d at 662–63 (fifth amendment violation) (dicta); *United States v. Piper,* 918 F.2d 839, 840–41 (9th Cir.1990) (same); *United States v. Oliveras,* 905 F.2d 623, 626 (2d Cir.1990) (same); *United States v. Rogers,* 899 F.2d 917, 924 (10th Cir.) (same) (dicta), *cert. denied,* —— U.S. ——,

111 S.Ct. 113, 112 L.Ed.2d 83 (1990); *United States v. Perez–Franco,* 873 F.2d 455, 463 (1st Cir.1989) (same) with *United States v. Frazier,* 971 F.2d 1076 (4th Cir.1992) (no fifth amendment violation); *United States v. Mourning,* 914 F.2d 699, 705–06 (5th Cir.1990) (same); *Henry,* 883 F.2d at 1011–12 (same); *see also United States v. Kinder,* 946 F.2d 362 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 214 60 U.S.L.W. 3796 (1992) (White, J., dissenting) (discussing circuit split and calling for its resolution).

mined that he had not shown true remorse. He did not turn himself in or voluntarily withdraw from criminal activity, and in fact, told plain lies at the time of his arrest; despite a clear opportunity to come clean, Saunders chose to perpetuate the conspiracy. Saunders' non-cooperation after his arrest, combined with his attempts to downplay his role in the conspiracy, led the district court to reasonably conclude that Saunders' remorse was too little, too late.

■■■ Finally, Saunders argues that in light of *Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), he was entitled to notice prior to the sentencing hearing that the district court intended to reject the presentence report recommendation. We conclude that the *Burns* notice requirement is inapplicable to this case. *Burns* held that Rule 32 of the Federal Rules of Criminal Procedure— which mandates that the defendant be given "an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence"—requires the sentencing court to give reasonable notice that it is contemplating departing upward on a ground not identified in the presentence report. *Id.* —— U.S. at ——, 111 S.Ct. at 2187. Here, Saunders was not caught off-guard by an upward departure nor did the court make a sentencing decision on grounds not mentioned in the presentence report—the district court simply chose not to accept a presentence report recommendation. *Guadagno*, 970 F.2d at 224. The inclusion of that *recommendation* in the report, by definition, gave Saunders notice that it was an open question at the sentencing hearing. The district court makes the final sentencing determination, *Sullivan*, 916 F.2d at 419, and *Burns* does not dictate advance warning of the sentencing judge's intent to reject a recommended acceptance of responsibility sentencing reduction.

## VI.

Finally, Saunders attacks guideline § 4B1.1. That guideline provides for a "career offender" enhancement if the "instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense" and "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. Here, Saunders had one prior crime of violence and one prior drug conviction. His guideline enhancement pursuant to § 4B1.1 resulted in a sentencing range of 210–262 months rather than 51–63 months. Saunders asserts that the United States Sentencing Commission (the Commission) exceeded the scope of its statutory authority in enacting § 4B1.1, and, alternatively, that this guideline violates principles of double jeopardy, due process, and cruel and unusual punishment.

### A.

■■■ 28 U.S.C. § 994(h)(2) authorized the Sentencing Commission to promulgate guidelines for adults who have "been convicted of two or more prior felonies, each of which is: (A) a crime of violence; or (B) a [drug offense]." Saunders maintains that the placement of the semicolon in this provision, combined with the "each of which" prefatory language, indicates that Congress intended the career offender enhancement to apply only if a defendant has two prior violent crime convictions *or* two prior drug convictions, but not one of each (as in his case). He contends Congress sought to go after offenders who made a habit of committing violent crimes *or* drug offenses, but not "cross-over criminal[s]" such as himself. Appellant's Br. at 32. According to Saunders, in promulgating § 4B1.1, the Commission removed the semicolon between (A) and (B) in 28 U.S.C. § 994(h)(2), and replaced "each of which" with "either," permitting a career offender enhancement for defendants who have one prior violent crime conviction and one prior drug conviction in contravention of Congress' intent.

We reject this contention. The Tenth Circuit, confronted with this precise argument, held that the statutory construction proffered by Saunders "ignores the plain language of 28 U.S.C. Section 994(h)." *United States v. Jones*, 898 F.2d 1461,

1464–65 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990). The court went on to explain the basis for its conclusion:

> In order to read Section 994(h)(2) as requiring that the two prior felonies must belong to the same (A) or (B) category, a plural "both of which are" construction would be necessary. Similarly, if the Section 994(h)(2)(A) and (B) categories were meant to refer to a set of two prior felonies, the "crime" and "offense" would be cast in the plural, not in the singular.

*Id.* We agree with the Tenth Circuit that the statute is clear on its face and that the Commission did not exceed its authority in enacting § 4B1.1.

### B.

██ Saunders also contends that § 4B1.1 violates his rights under the double jeopardy clause. Specifically, he argues that, as a result of his prior drug conviction, 21 U.S.C. § 841(b)(1)(C) enhanced his sentence to a 30–year maximum prison term, and § 4B1.1 increased his base offense level from 32 to 34, together constituting multiple punishments for a single crime. Saunders' argument is unavailing.

As we held in *United States v. Alvarez,* 914 F.2d 915, 920 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991), "[c]alculation under the Federal Sentencing Guidelines of the proper sentence within the statutory range established by Congress … does not constitute multiple punishment." *Accord United States v. Amis,* 926 F.2d 328, 330 (3d Cir. 1991); *United States v. Sanchez–Lopez,* 879 F.2d 541, 559 (9th Cir.1989). Here, the guidelines provided a sentencing range of 262–327 months, while the statute provided a maximum 30–year prison term. Because Saunders' 262–month sentence was within the statutory range sanctioned by Congress, it did not violate the double jeopardy clause.

██ Finally, Saunders alleges that application of § 4B1.1 in his case constitutes cruel and unusual punishment in violation of the eighth amendment. Specifi-cally, he claims that his 262–month sentence is disproportionate to the gravity of his crime and to the 16–month sentence James received for essentially the same wrongdoing. We disagree. The eighth amendment forbids only extreme sentences that are "grossly disproportionate" to the crime. *Harmelin v. Michigan,* —— U.S. ——, ——, 111 S.Ct. 2680, 2705, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). Establishing prison terms for "individual crimes involves consideration of factors that, as a general matter, is largely the function of the legislature, not the courts," *United States v. Jones,* 950 F.2d 1309, 1317 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992), and, accordingly, we ordinarily grant substantial deference to the legislative determination. Thus, eighth amendment challenges to sentences that are both prescribed by the guidelines, and within the statutory maximums established by Congress, are looked on with disfavor. *Id.*

Here, Saunders' admittedly harsh sentence is not grossly disproportionate to his crime, *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2705 (upholding life sentence without possibility of parole for possessing 650 grams of cocaine); *cf. Alvarez,* 914 F.2d at 920 (upholding a 30–year sentence for a single count of possessing a firearm), or to James' relatively light sentence. By imposing a 30–year maximum penalty for individuals with a prior drug conviction, Congress made clear that it considers repeat drug violations among the gravest offenses in the federal code. Saunders' heavy punishment resulted from the instant offense, combined with two prior felony convictions and a decision not to cooperate with authorities; James' lighter sentence, by contrast, resulted from the fact that he had *no* criminal record and cooperated with authorities from the start. *Cf. United States v. Fozo,* 904 F.2d 1166, 1172 (7th Cir.1990) (disparate sentences explained by one defendant's attempt to improperly influence his codefendant's testimony). The government recognized his assistance in requesting a downward departure under § 5K1.1 of the Guidelines, which the court granted. This

disparity in sentences is a rational one that does not violate the eighth amendment proportionality principle.

AFFIRMED.