**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Terry DAY, Defendant–Appellant.**

**No. 03–2469.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 2003.

Decided Nov. 17, 2003.

Stephen Ehlke, Madison, WI, for Plaintiff–Appellee.

Joel B. Winnig, Madison, WI, for Defendant–Appellant.

Before RIPPLE, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

Terry Day appeals his conviction and sentence, pursuant to 18 U.S.C. § 922(g)(1), for being a felon in possession of a firearm, in this case a Ruger Blackhawk .357 caliber revolver. The facts, which we will briefly recount, are bizarre.

In September 2001, Day lived with his then-wife, Elizabeth Rude, in a three-bedroom ranch home in Belleville, Wisconsin. Also living in the house, though apparently in the basement, were Rude's daughter Rachel, her fiance Jamie Kraemer, and Rachel's son Dylan.

Early in the morning of September 9, 2001, between 12:30 and 1:00 in the morning, Kraemer received a phone call from Day who, having gotten wind that his probation agent would be doing a home visit, wanted certain items removed from his bedroom and placed in his car. A short time later, between 2:00 and 2:30 a.m., Day called again to ask that a few more items be moved. Rachel was awake during this second call and could hear some of what Day said. Rachel said she heard him say "under the dresser" and "don't let Rachel know."

Because she had heard those words, Rachel went upstairs to look under Day's dresser. Pulling open the bottom drawer, she found a plastic bag containing a gun lying in the space under the bottom drawer. She called to Kraemer to come upstairs, and when he did, he saw the silhouette of a gun in the plastic bag. Rachel then put the gun back where it had been and returned to the basement.

Later that day, however, Rachel had a conversation with her mother in which she passed her a note which said that Day had a gun. The following day, Rachel, who was home in bed, had several telephone conversations with her mother. During one of the calls, Elizabeth asked Rachel to bury the gun. Rachel then wrapped the gun in several more plastic bags and buried it under an unoccupied doghouse.

In the middle of November 2001, Rachel called the Belleville police department to ask that an officer come to the house and retrieve the gun. An officer responded and took the gun and some ammunition as evidence.

Day was indicted for being a felon in possession of a firearm. His defense was going to be that Kraemer stole the gun from his employer, Ryan Hart. The theory was that Kraemer, who had a grudge against Hart and had previously stolen pot pipes from him, also stole the gun and planted it in Day's dresser (in conspiracy with Rachel and Elizabeth) in order to frame Day to make it easier for Elizabeth to divorce him. It is not surprising that the government filed a motion in limine to preclude testimony that Kraemer stole anything from Hart, including pot pipes and a gun. The judge granted the motion,

finding that it would be "speculation for the jury to infer that he actually did steal the gun and bring it to the house without Mr. Day's knowledge, and that's just too much of a leap for a jury to make."

Day was convicted. At his sentencing, the judge added 2 points to his base offense level under U.S.S.G. § 2K2.1(b)(4) because the gun was stolen.

In his appeal, Day contends that by granting the motion in limine the judge improperly denied him the right to cross-examine Kraemer in violation of his Sixth Amendment right to confront a witness against him. He also contends that the 2-point increase to the base offense level was improper. Finally, he asks for a new trial to correct a manifest injustice.

■ In determining whether the Sixth Amendment has been violated, we look to see whether there was sufficient information presented to the jury to allow it to evaluate the witness. We must distinguish "between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." *United States v. Saunders*, 973 F.2d 1354, 1358 (7th Cir. 1992). So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or bias, the Sixth Amendment is not compromised. *United States v. Saunders*, 166 F.3d 907 (7th Cir.1999). The trial judge retains "broad discretion ... to preclude repetitive and unduly harassing interrogation." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

Our review of the record convinces us that we are dealing with "peripheral concerns," and we can see no abuse of discretion. Kraemer was adequately cross-examined. Among other things, he was asked whether the gun had ever been in his possession between the time he saw it in Hart's shop until the trial. His answer was no. To allow the jury to infer that because Kraemer allegedly stole pot pipes from Hart he also stole the gun, which he then planted on Day to help Elizabeth with her divorce, would, as the trial judge noted, be to engage in pure speculation. And of course, because Kraemer said he never possessed the gun, he would obviously have said "no" if asked if he stole it, and Day offered no proof that he was prepared to prove otherwise. What he wanted to do was ask the question and leave it dangling in the air, hoping (without evidence) that the jury would not believe the negative answer. Judge Crabb was wise to not let this string play itself out.

■ Day also contends that it was error to add 2 points to his offense level under U.S.S.G. § 2K2.1(b)(4) because the gun was stolen. We disagree. Section 2K2.1(b)(4) provides that the base offense level should be increased by 2 levels "[i]f any firearm was stolen, or had an obliterated serial number." The commentary says that the increase applies even if the defendant did not know the gun was stolen. The evidence in this case showed that Hart owned the gun and kept it at his automobile repair shop during the summer of 2001. Rachel Rude testified that Day showed it to her in the shop. But late in the summer of 2001, Hart noticed that the gun was missing. When Hart was first interviewed by the Dane County sheriff's department he said that he did not know who took it. Later, he said that Kraemer stole it. Still later he said the only reason he believed Kraemer had taken it was because Day and his brother, Eddie Day, told him so. There is a reasonable circumstantial case that, because the gun was in the shop and was next seen hidden under Day's dresser, Day stole it. That case is bolstered by the fact that when Day showed it to Rachel in the shop she asked whether the gun belonged to him. His reply: "Not yet." We see no error in the

assignment of 2 points to Day's offense level.

■ Finally, Day contends he is entitled to a new trial to prevent a manifest injustice. We must review this claim for plain error because, although Day moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), he did not renew the motion after the verdict was returned. Neither did he make a motion for a new trial under Rule 33. Under these circumstances, we would reverse an order denying a motion for a new trial only if the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense is so tenuous that a conviction would be shocking. *United States v. Owens,* 301 F.3d 521 (7th Cir. 2002). We are not shocked by this conviction.

Terry Day's conviction and sentence are AFFIRMED.