# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2099

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

THOMAS E. SIENKOWSKI,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01-CR-108—**Lynn Adelman**, *Judge.*

———————

ARGUED JANUARY 7, 2004—DECIDED FEBRUARY 20, 2004

———————

Before FLAUM, *Chief Judge*, and MANION and EVANS, *Circuit Judges*.

FLAUM, *Circuit Judge*. This appeal involves the government's objection to the district court's refusal to apply a United States Sentencing Guideline § 3B1.1 role enhancement for the defendant Thomas Sienkowski where the parties had agreed to the enhancement. Section 3B1.1(b) provides for a three-level sentencing enhancement where a defendant is a manager or supervisor of criminal activity involving five or more participants. For the reasons stated herein, the sentence imposed by the district court is vacated and the case is remanded for resentencing consistent with this opinion.

## I.  Background

Sienkowski was a member and officer of the Milwaukee Chapter of the Outlaws Motorcycle Club, an international motorcycle club. The Outlaws consisted of chapters grouped into geographical regions, with each chapter headed by officers, all of whom answered to a single international president. During most of the time period covered in the indictment, Sienkowski was the vice president of the Milwaukee Chapter. In 2000, he became president.

Starting in 1990, members of the midwest Outlaws chapters began to engage in an escalating pattern of violent activity as part of a territorial struggle with their major rival, the Hell's Angels. The violent activities included the placement of car bombs, surveillance on rival club members, and planned murders and armed assaults on rival bikers. In his role as vice president, Sienkowski attended "bosses meetings" where presidents and vice presidents of the various midwest chapters planned and discussed the goals and progress of the war and made plans to carry out assaults on rival bikers.

In 2001, a federal indictment charged Sienkowski, along with five other members of the Outlaws, with racketeering and drug-related offenses. Sienkowski pled guilty to one count of RICO (Racketeer Influenced and Corrupt Organizations) conspiracy in violation of Title 18, United States Code, § 1962(d)—specifically, conspiracy to conduct affairs of the enterprise through a pattern of racketeering which included murder, arson, extortion, and drug trafficking as the result of the criminal activity that comprised the biker war. The government alleged that the defendant Outlaws conspired to engage in seven predicate acts constituting racketeering over the course of the thirteen years charged in the indictment.

The parties agreed to recommend a total offense level of 33, which included a three-level aggravating role increase

under U.S.S.G. § 3B1.1(b) and a three-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1. The presentence report ("PSR") calculated the defendant's offense level at 33, including the same upward enhancement and downward adjustment agreed to by the parties. With a criminal history category of II, the PSR calculated Sienkowski's Guideline range as 151-188 months. Although Sienkowski objected to certain factual assertions in the PSR, he did not object to the three-level enhancement.

At sentencing, the district court accepted the base level of 33, and a three-level downward adjustment for acceptance of responsibility, but refused to accept the three-level aggravating role enhancement. The court found that the government had not provided sufficient evidence to support the enhancement. The government objected to the court's ruling and orally proffered additional evidence supporting the enhancement. The government asked the court for a continuance so that witnesses could be brought to testify, but the court declined to grant one. The court sentenced the defendant to 120 months in prison.

The government now appeals the district court's refusal to apply the § 3B1.1 enhancement to Sienkowski's sentence. Alternatively, the government requests that this Court find that the district court abused its discretion by failing to grant the government a continuance to supplement the record.

## II. Discussion

Section 3B1.1(b) of the U.S. Sentencing Guidelines states "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved 5 or more participants or was otherwise extensive, increase by 3 levels." A determination that a defendant is not a manager or supervisor of criminal activity involving five or more participants is subject to the clearly erroneous

standard of review. *United States v. Cantero*, 995 F.2d 1407, 1413 (7th Cir. 1993). It is the government's burden to establish by a preponderance of the evidence facts that justify applying a sentencing enhancement. *Id.*

The district court acknowledged that the criminal activity involved the requisite number of participants, but the issue of whether Sienkowski should be considered a manager or supervisor of the criminal activity proved to be more difficult. The government contends that the record contains ample evidence of Sienkowski's supervisory role. Sienkowski admitted to participating in planning the murder of a rival motorcycle club president. Thereafter, and pursuant to the plan, other members of the conspiracy traveled to Minneapolis armed with weapons and explosive devices. Additionally, Sienkowski admitted to, along with other conspirators, "direct[ing] activities of fellow Outlaws from a fortified van containing numerous firearms and other dangerous weapons, in a planned assault on rival gang members." The government also asserts that the PSR establishes that Sienkowski attended a bosses meeting to plan the detonation of a bomb at the clubhouse of a rival gang. At the plea hearing, it was noted that other Outlaw members implemented the bosses' plan by building, placing, and detonating the bomb. Furthermore, the government notes that as chapter vice president, Sienkowski substituted for the president in his absence.

The district court was unconvinced that this evidence, along with the other evidence contained in the record, justified enhancing Sienkowski's sentence under § 3B1.1(b). In its order, the district court reviewed each of the seven individual predicate acts and was unable to determine that the defendant managed or supervised anyone. The court also considered the conspiracy as a whole and reached the same conclusion. It found that there was no evidence that Sienkowski supervised or directed others, recruited others to join the criminal activity, or claimed a larger share of the

proceeds. Furthermore, even though Sienkowski was present at the bosses meetings, the district court found that there was no evidence that his level of participation at those meetings warranted an offense level enhancement.

Even when limiting our review to the evidence contained in the record, the decision of the district court gives us pause. However, prompting our decision to remand this case for resentencing is the district court's decision to disregard the additional facts proffered by the government at the sentencing hearing and its refusal to grant the government a continuance to present additional evidence on the issue of role enhancement. Upon learning at the sentencing hearing that the district court intended not to apply the role enhancement, the prosecutor proffered that if called as a witness, Edward Anastas, the Milwaukee chapter president under whom Sienkowski had served as vice president, would testify that Sienkowski directed Outlaw members in a planned confrontation with Hell's Angels at a speedway event in Lancaster, New York. The government also represented that Anastas would testify that Sienkowski supervised armed guard duty at other speedway events. The judge refused to consider this additional evidence on the grounds that it was not contained in the PSR and that he was unconvinced that the government actually possessed such evidence. In his written opinion, the district judge explained that he declined to grant the government's request that sentencing be adjourned so that further evidence could be presented because such action would be futile, as he did not believe that the government possessed the evidence, and that it would be unfair to the defendant, "given the prominence of the sentencing guideline determination in modern federal criminal practice." *United States v. Sienkowski*, 252 F. Supp. 2d 780, 785 (E.D. Wisc. 2003)

A district court's refusal to grant an evidentiary hearing is reviewed for abuse of discretion. Fed. R. Crim. P. 32(i)(2) (2002); *Cantero*, 995 F.2d at 1412. While a party has

no "right" to a hearing, this Court has held that § 6A1.3 of the Sentencing Guidelines "requires the district court to provide a procedure—but not necessarily an evidentiary hearing—in which the parties may argue contested sentencing issues." *Id.* at 1413 (citing *United States v. Levy*, 955 F.2d 1098, 1106 (7th Cir. 1992)). While the necessary procedures vary depending on the nature of the dispute,[1] and sentencing courts have discretion to determine which particular procedures are required in a given context; statutory and case law make clear that parties are entitled to notice and an opportunity to be heard regarding disputed sentencing issues. U.S. SENTENCING GUIDELINES MANUAL § 6A1.3, cmt. (2002) (instructing that when a factor is in dispute, "the court must ensure that parties have an adequate opportunity to present relevant information"); *United States v. Jackson*, 32 F.3d 1101, 1108 (7th Cir. 1994) (concluding that "Rule 32 and § 6A1.3 of the Guidelines require both reasonable advance notice, i.e., knowledge, of the ground on which the district court is contemplating an enhancement as well as a meaningful opportunity to challenge the issue") (italics omitted); *United States v. Osborne*, 931 F.2d 1139, 1149 (7th Cir. 1991) (explaining that the sentencing court must provide notice to the parties of the specific facts the court intends to rely on at sentencing in order to satisfy § 6A1.3's procedural requirements).

---

[1] Often times, written statements of counsel or affidavits may be adequate to satisfy § 6A3.1's dictates. U.S. SENTENCING GUIDELINES MANUAL § 6A1.3, cmt. (2002); *see, e.g.*, *United States v. Ibanez*, 924 F.2d 427, 430 (2d Cir. 1991). However, as the commentary to § 6A1.3 provides, "an evidentiary hearing may sometimes be the only reliable way to resolve disputed issues." *See, e.g.*, *United States v. Jimenez Martinez*, 83 F.3d 488, 494-95 (1st Cir. 1996) (reversing district court's denial of defendant's motion for evidentiary hearing given questionable reliability of affidavit on which the district court relied at sentencing).

The defendant contends that by disclosing the PSR in advance of sentencing, providing the opportunity to supplement the PSR with additional information before sentencing, and allowing the government to proffer the evidence it had to support the enhancement at the hearing, the district court provided the procedures required by § 6A1.3. We disagree. The circumstances presented in this case render those procedures insufficient. The parties' agreement on the role enhancement issue combined with the presentence report's parallel recommendation lead to this determination and separate this case from ones reaching different outcomes.

The role enhancement issue was not in dispute until the court raised its own concerns regarding the sufficiency of the evidence supporting its application. If it had been previously disputed, both sides would likely have arrived at the sentencing hearing prepared to present evidence and put forward their own view of the facts contained in the PSR. However, as discussed above, both parties agreed prior to sentencing that the § 3B1.1(b) enhancement was warranted. The probation department prepared a PSR designating Sienkowski as a manager or supervisor. Although Sienkowski submitted a number of objections to the PSR, he did not dispute the application of the role enhancement. Absent notice from the district court, there was no way for the government to anticipate that there would be a dispute regarding this particular sentencing enhancement. While sentencing courts are not bound by parties' agreements in determining the proper application of the Guidelines, the procedural requirements of § 6A1.3 and systemic efficiency are contravened when a court fails to notify the parties that such agreements are in fact disputed by the court itself.

To conclude otherwise, as the government noted at oral argument, would turn sentencing hearings into trials and the benefits of plea agreements would be eliminated.

Ordinarily when both parties agree to a sentencing adjustment, they do not come to court armed with the testimonial, documentary, and physical evidence necessary to prove the underlying basis of their agreement. Serious practical problems are posed by a rule that puts parties in the position of needing a reserve bench of witnesses at sentencing hearings ready to testify to any and all issues that the court may sua sponte determine are unsupported by the record. Accordingly, since both parties had agreed to a particular sentencing enhancement, when the court found that the facts in the record were insufficient to support that enhancement, the court should have notified the parties in advance of the sentencing hearing of the issue in dispute or at the sentencing hearing granted a continuance to the party seeking to supplement the record on that issue.

In *United States v. Saunders*, 973 F.2d 1354 (7th Cir. 1992), we rejected the defendant's argument that he was entitled to notice prior to the sentencing hearing that the district court intended to reject the presentence report recommendation that he be given a two-level reduction for acceptance of responsibility. We concluded that the inclusion of the recommendation in the presentence report gave Saunders sufficient notice that it was an open question at the sentencing hearing and that "advance warning of the sentencing judge's intent to reject a recommended [sentencing adjustment]" was unnecessary. *Id.* at 1364. What distinguishes *Saunders* from the case before us is that Saunders had not entered into an agreement with the government on the disputed issue. When parties have not entered into a formal agreement, the inclusion of a recommendation in the PSR may be sufficient notice that the issue is an open question at sentencing; but when the parties have, pursuant to a plea agreement, agreed to a sentencing recommendation, the mere inclusion of a parallel recommendation in the PSR is unlikely to be a sufficient signal to the parties that the issue might be contested at the sentencing hearing.

In *United States v. Jackson* we determined that when a trial court relies on a Guideline factor not in the PSR nor in the prosecutor's recommendation, contemporaneous notice at the sentencing hearing that the court is considering an enhancement fails to satisfy the requirements of Rule 32 and § 6A1.3. 32 F.3d at 1101. In reaching this conclusion, the *Jackson* Court noted that, "[t]he right to be heard has little reality or worth unless one is informed that a decision is contemplated." *Id.* at 1106 (quoting *Burns v. United States*, 501 U.S. 129, 132 (1991) (internal citations omitted)). Similarly, when a trial judge finds there to be insufficient evidence to support a Guideline enhancement that was recommended in the PSR and agreed to by both parties, notice of that finding at the sentencing hearing falls short of providing the parties a meaningful opportunity to be heard. The parties in this case were likely as surprised by the district court's announcement as if the enhancement had never been contemplated in the first place, as was the case in *Jackson*. In both situations the parties have no prior indication that the issue is in dispute and their rights to challenge sentencing issues are impaired when the district court denies a requested opportunity to prepare and call witnesses, as allowed under § 6A1.3.

Given the lack of advance notice in this case, the district court should have granted the government's request for a continuance. Through the PSR, the government had provided extensive facts to the court regarding Sienkowski's participation in the Outlaw conspiracy. Since the district judge believed these facts to be insufficient, he should have been willing to consider the additional evidence the government had to offer that may have provided the details that the judge found wanting. Contrary to the district court's position that all facts necessary to support the enhancement must be set forth in the PSR, any information may be considered as long as it has sufficient indicia of reliability. *United States v. Watts*, 519 U.S. 148, 156 (1997);

*Nicholas v. United States*, 511 U.S. 738, 748 (1994). Furthermore, there was no reason for the district court to believe that the government would be unable to produce the evidence proffered. Certainly, the Milwaukee club president, Edward Anastas, would be knowledgeable about the role and specific activities of the defendant, his second in command. Indeed, Anastas was a major source for other information contained in the PSR, which the district court did accept as factually correct and reliable.

In denying the government's motion for a continuance, it appears that the district judge was at least partially motivated by what he perceives to be "the prominence of the sentencing guideline determination in modern federal criminal practice." *Sienkowski*, 252 F. Supp. 2d at 785. In his order, the trial judge expressed his concern that as more defendants enter into plea agreements, sentencing hearings are essentially replacing trials, yet defendants are afforded fewer procedural safeguards at the sentencing stage than they are at trial. *Id.* at 785-86. Clearly, when a court disagrees with federal law the appropriate response is not to utilize judicial discretion to achieve its preferred outcome. We agree that the trial court "must maintain its role in the sentencing process"; "carefully review the PSR to determine the appropriateness of the guideline determinations contained therein"; and "hold the government to its burden". *Id.* at 786. At the same time, neutrality is always a court's essential objective and that goal is not well served when a jurist appears to act in a partial manner.

Our decision today is one of narrow applicability. In this case the parties pre-agreed to a sentencing enhancement; the PSR made a parallel recommendation regarding the enhancement to the court; the facts supporting the enhancement contained in the record were not so utterly insufficient that no reasonable judge could have applied the enhancement; and the government proffered additional evidence at the sentencing hearing in support of the enhancement.

Given these circumstances, the district court abused its discretion by not granting a continuance to allow the government to supplement the record. Since the applicability of the role enhancement was not in dispute, a continuance would not have prejudiced the defendant. Obviously, we would reach the same conclusion if the positions were reversed and it was the defendant, rather than the government, who was adversely affected by the district court's ruling. However, a variance in any of the other aforementioned factors would likely compel a different outcome.

It is well-established that district courts make final sentencing determinations and enjoy considerable discretion in doing so. We emphasize that our decision today does not alter any of our previous decisions regarding a district court's discretion in making sentencing determinations or refusing to grant evidentiary hearings. District courts are not bound by the parties' agreement in determining the proper application of the Guidelines and must make their own determinations in light of the evidence; however, when a district court's decision regarding the application of an enhancement is in conflict with both the PSR's recommendation and the parties' formal agreement, the court needs to either alert the parties to the disputed issue prior to the sentencing hearing or provide notice at the sentencing hearing and then agree to a continuance if a party makes an offer of proof and requests an opportunity to supplement the record.

It is quite possible that by holding an evidentiary hearing the district court will find the facts necessary to justify enhancing Sienkowski's sentence under § 3B1.1(b).

### III. Conclusion

We VACATE the defendant's sentence and REMAND this case to the district court for further proceedings consistent with this opinion.

**A true Copy:**

  **Teste:**

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—2-20-04