In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1449

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VINCENT SHARP,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 CR 5—**John Daniel Tinder**, *Judge.*

ARGUED SEPTEMBER 27, 2005—DECIDED FEBRUARY 1, 2006

Before FLAUM, *Chief Judge*, and BAUER and SYKES, *Circuit Judges*.

BAUER, *Circuit Judge.* Vincent Sharp pleaded guilty to one count of distribution of five kilograms or more of a substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii). The district court sentenced Sharp to 235 months' imprisonment. On appeal, Sharp claims that the district court erred by failing to give notice of its intention to deviate from the presentence report (PSR), and that his sentence was unreasonable. We affirm.

## I. Background

On January 14, 2004, a grand jury indicted Sharp on one count of distribution of five kilograms or more of a substance containing cocaine and one count of possession with intent to distribute 500 grams or more of a mixture containing cocaine. On March 24, 2004, a plea agreement and petition to enter a plea of guilty were filed in the district court. Sharp agreed to plead guilty to the distribution count with an applicable base offense level of 34 pursuant to U.S.S.G. § 2D1.1(c)(3). The parties reserved the right to argue over an adjustment for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1), and agreed that the court should grant a two-level reduction if Sharp continued to accept responsibility for his criminal conduct.

Sharp appeared at the April 9, 2004 district court plea hearing with counsel Michael T. Conway. Under oath, Sharp acknowledged that the plea agreement accurately reflected the parties' agreement concerning the application of the Sentencing Guidelines. He also told the court that he understood that the guilty plea would be binding irrespective of the court's determination of the applicable Guidelines.

The government called Detective Rob Foster of the Metropolitan Drug Task Force to testify to the factual basis for the guilty plea. In July 2003, he received information that Sharp was distributing large amounts of drugs from his residence in Indianapolis. After several controlled purchases of cocaine from Sharp, Detective Foster applied for and obtained a search warrant for the residence. Officers executed the warrant when Sharp was at home on August 11, 2003. After receiving *Miranda* warnings, Sharp told Detective Foster that he had approximately one kilogram of cocaine, a firearm, and drug paraphernalia in the residence. During the search, officers located 1126

grams of cocaine, a firearm, a quantity of marijuana, digital scales, plastic baggies, and more than $13,000 cash.

After his arrest and transport to the police station, Sharp told Detective Foster that he had purchased the cocaine the day before for approximately $23,000. He told Detective Foster that he had been selling cocaine for approximately fourteen years and that he had distributed approximately one kilogram of cocaine every month for the past year and a half. Sharp stated that he also sold crack cocaine.

At the plea hearing, Conway stated that Sharp had no objections to the factual basis presented by Detective Foster, except that he denied being involved in the enterprise for fourteen years. Instead, Sharp claimed to have been employed in his current position for fourteen years. The following exchange then transpired:

| | |
|---|---|
| The Court: | So there is a dispute about the length of his involvement in the activity as opposed to what the officer testified? |
| Mr. Conway: | Right. We're not saying he didn't say that. Maybe just in the confusion . . . |
| The Court: | Other than that, is that pretty much the way it happened, Mr. Sharp? |
| Mr. Sharp: | Yes. |

The district court accepted Sharp's guilty plea, adjudged Sharp guilty of the distribution count, and ordered the preparation of a PSR.

The resulting PSR indicated that Sharp was responsible for 19.216 kilograms of cocaine and 305.76 grams of marijuana, and that his unadjusted base offense level was 34. The amount of cocaine was based on Sharp's statement to Detective Foster that "he had been dealing approximately one kilogram of cocaine every month for the past year and a half." The PSR included a two-level

upward adjustment for possessing a firearm during the
commission of the offense and a three-level downward
adjustment for acceptance of responsibility. Sharp ex-
pressed only the following two objections to the PSR:

> The defendant objects to paragraph 19 of the presen-
> tence report on the grounds that § 2D1.1(b)(1) does
> not apply, as the firearm found in the defendant's
> bedroom has no connection or nexus to the narco-
> tics trafficking. The defendant would also note a typo-
> graphical error in paragraph 48 of the presen-
> tence investigation report in that 1982 should be 1989.

Sharp appeared with Conway at the January 26, 2005
sentencing hearing at the district court. Conway examined
Sharp to establish that he used and kept the gun independ-
ently of any drug deals. On cross-examination, Sharp for
the first time claimed that the PSR was incorrect and that
he was not responsible for the 19 kilograms of cocaine. He
also denied telling Detective Foster that for the past year
and a half he had received one kilogram of cocaine every
month. Sharp gave the following answers:

> Q.     . . . do you remember telling him you had been
>        dealing in the kilogram level for a year and a
>        half?
>
> A.     No.
>
> Q.     Okay, so that is an incorrect statement?
>
> A.     Right.
>
> * * *
>
> Q.     What is alleged in the presentence report . . . is
>        that you are responsible for 19—over 19 kilo-
>        grams of cocaine.
>
> A.     No.

Q. Well, the presentence report says that. Is that not true?

A. Nineteen kilograms?

Q. Yes, sir.

A. No, that is not true.

Instead, Sharp testified that he had bought and sold only five kilograms of cocaine and that he had only been dealing drugs for a year and a half. After Sharp's testimony, the government played an audiotape recording of Sharp's post-arrest statement to Detective Foster. The tape confirmed the Detective's testimony that Sharp told him that he sold one kilogram of cocaine per month for the past year and a half, and that he had been dealing drugs "off and on, for 14 years."

Based on Sharp's conduct at the sentencing hearing, the government argued that he was no longer accepting responsibility for his criminal conduct and was, by providing the district court with materially false information, attempting to obstruct justice. The court denied Sharp any adjustment for acceptance of responsibility and gave him a two-level enhancement for obstruction of justice. After setting the total offense level at 38 and the guideline range at 235 to 293 months, the court sentenced Sharp to a term of 235 months' imprisonment, followed by a term of five years supervised release. On February 3, 2005, Sharp filed a notice of appeal, arguing: (1) that the district court was required to give notice prior to the sentencing hearing that it intended to deviate from the PSR; and (2) that the sentence of 235 months was unreasonable.

## II. Discussion

### A. Notice

Sharp primarily argues that he was entitled to notice, prior to the sentencing hearing, that the district court

intended to reject the PSR recommendation of acceptance of responsibility and to impose instead an enhancement for obstruction of justice. Although this Court ordinarily reviews for clear error a district court's decision not to provide notice of its intention to depart from the guidelines, the defendant's failure to object at sentencing results in plain error review. *See United States v. Otis*, 107 F.3d 487, 489 (7th Cir. 1997); *United States v. Jackson*, 32 F.3d 1101, 1104 (7th Cir. 1994). Plain error exists when there is an error which is clear or obvious and which affects substantial rights. *United States v. Sumner*, 265 F.3d 532, 539 (7th Cir. 2001). At a minimum, the error must be clear under current law. *Id*. (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

Rule 32 of the Federal Rules of Criminal Procedure provides:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed. R. Crim. P. 32(h).[1] The Sentencing Guidelines simi-

---

[1] Other Courts of Appeals have considered whether the notice requirement of Rule 32(h) survives *United States v. Booker*, 125 S.Ct. 738 (2005), in which the Supreme Court rendered the Sentencing Guidelines advisory. *See, e.g.*, *United States v. Monroy*, 135 Fed. Appx. 190, 193 (10th Cir. 2005) (holding that, post-*Booker*, departures remain "subject to Rule 32(h)"); *but cf. United States v. Simmerer*, 2005 WL 3068095, at *3 (11th Cir. 2005) (holding that district court's failure to comply with Rule 32(h)'s
(continued...)

larly require that the court provide the parties with an adequate opportunity to present information when a sentencing factor is reasonably in dispute. U.S.S.G. § 6A1.3(a). In *Burns v. United States*, the Supreme Court held that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Id.* at 138. The notice must "specifically identify" the reason for the departure. *Id.* at 138-39.

Although the notice requirement for adjustments is "less exacting than the one applicable to departures," Rule 32 "mandates that the defendant receive some notice of potential adjustments." *United States v. Thomas*, 969 F.2d 352, 356 (7th Cir. 1991). Extending the *Burns* reasoning, this Court has held that "simply being aware of facts which may warrant an adjustment is not sufficient to satisfy Rule 32's notice requirement." *United States v. Jackson*, 32 F.3d 1101, 1108 (7th Cir. 1994). Instead, defense counsel must have a full opportunity to challenge disputed factors relating to an adjustment within the Guidelines after being informed that they will be at issue at sentencing. *Id.* If the PSR or the prosecutor's recommendation does not identify the basis for the potential sentencing increase, then "the Judge must inform the defendant, a sufficient time in advance of sentencing (i.e. [sic] not during the actual sentencing), of the specific grounds that the court

---

[1] (...continued)
notice provision cannot be plain error because "no precedent from this court or from the Supreme Court establish[es] that Fed. R. Crim. P. 32 applies to a post-*Booker* upward variance"). Because the parties did not brief this issue, however, we will not address it here.

is considering relying on to increase the terms of confinement." *Id.*

### 1. Acceptance of Responsibility

Sharp first argues that this Court's case law compelled the district court to give notice of its decision to deny Sharp's three-level adjustment for acceptance of responsibility. The Sentencing Guidelines provide for a two-level reduction in the offense level "if the defendant clearly demonstrates acceptance of responsibility for his offense," and an additional one-level reduction upon a government motion "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to plead guilty." U.S.S.G. § 3E1.1. A defendant who "falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.1(a). Conway conceded at argument before the district court that the facts contested by Sharp, particularly the amount of cocaine, constituted relevant conduct. Because the denial of the reduction was therefore justified, the only remaining issue is whether the district court was required to provide advance notice of its intent to deny.

This Court has never held that a defendant is entitled to notice from the district court of a downward adjustment for acceptance of responsibility. To the contrary, this Court has expressed skepticism of the argument that defendants must be provided "notice and opportunity to rebut evidence that at best serves only to limit the possibility of a downward adjustment." *United States v. Beltran*, 109 F.3d 365, 370 (7th Cir. 1997). In *United States v. Saunders*, this Court reviewed the district court's denial, after a jury trial, of a reduction based on Saunders' acceptance of responsibility. 973 F.2d 1354 (7th Cir. 1992).

This Court held that the *Burns* notice requirement was inapplicable because the district court "simply chose not to accept a presentence report recommendation." *Id.* at 1364. In so holding, the Court found that Saunders was not caught off guard because "the inclusion of that *recommendation* in the report, by definition, gave Saunders notice that it was an open question at the sentencing hearing." *Id.* As in *Saunders*, Sharp was not caught off guard by the district court's action because the PSR included the recommendation. Its inclusion gave Sharp notice that the issue could be raised, although he assumed it would not be an open question at the sentencing hearing because the parties had agreed to the reduction. In Sharp's words, "the parties at Sharp's sentencing hearing anticipated they would be arguing solely over the role that a firearm Sharp possessed played in his offense," and not the acceptance of responsibility issue.

Based on the plain language of the plea agreement and the PSR, however, this assumption was unjustified. Sharp had ample notice, from the plea agreement and from the court, that the recommendation of a two-level reduction was conditional in nature and that the government could decide not to file a motion recommending the additional reduction if Sharp did not continue to cooperate. *See United States v. Brumfield*, 301 F.3d 724, 731 (7th Cir. 2002) (finding that both the plea agreement and the PSR provided the defendant with notice). The language of the plea agreement first provided Sharp with notice. In it the parties used conditional language to describe the acceptance of responsibility reduction:

> To date, Sharp has demonstrated acceptance of responsibility for his criminal conduct. In the event he continues to accept responsibility, his offense level should be decreased by two levels, pursuant to USSG § 3E1.1(a).
>
> * * *

> In the event he continues to accept responsibility, at the time of sentencing. [sic] the United States will file a motion that informs the Court of the same and enables the Court to decrease Sharp's offense level by one additional level, pursuant to USSG § 3E1.1(b).

By its terms, the agreement between the parties conditioned the government's recommendation of both the two-level reduction and the additional one-level reduction on Sharp's continued cooperation. Sharp did not object to this portion of the plea agreement, just as he did not object to the recommendation in the PSR. In addition, the district court admonished Sharp at the plea hearing:

> In the event you continue to cooperate, the United States will file a motion to enable the Court to decrease your offense level by one additional level under the acceptance of responsibility provisions of Subsection B.

When questioned by the court, Sharp affirmed that this was the agreement, again plainly conditional, that he entered into with the government. Taken together, the plea agreement, the court's admonishment, and the PSR recommendation gave Sharp notice that, if he did not continue to cooperate, the government could nullify the acceptance of responsibility reduction.

At the sentencing hearing, Sharp did not continue to cooperate. After noting that Sharp appeared to be "very forthcoming" with law enforcement on the night of his arrest, the district court found that

> sadly, Mr. Sharp took the stand here and gave materially false testimony on material points, specifically with respect to the length of his kilogram quantity distributorship of cocaine. It was a fact clearly set out in the presentence report on which the calculation of the base offense level was indicated. It was not indicated to be an objection by the defense, and adequate time was given to object to that.

Sharp's testimony directly contradicted the PSR, Detective Foster's testimony, the plea agreement, and the audiotape. The court noted that at the plea hearing, neither of Sharp's two objections to the factual predicate related to the issues that he later disputed at the sentencing hearing. Because "he was not truthful or forthcoming with the Court and was attempting to minimize his involvement in a materially false way," the court found that Sharp was not entitled to the reduction for acceptance of responsibility.

Sharp argues that he was entitled to notice under this Court's decision in *United States v. Sienkowski*, 359 F.3d 463 (7th Cir. 2004). In holding that the district court abused its discretion by not providing the government notice of its intent to reject an enhancement agreed to by both parties, this Court noted that the enhancement had not been in dispute until the district court raised the issue at the sentencing hearing. *Id.* at 470. Defendant argues that in this case, as in *Sienkowski*, the acceptance of responsibility reduction was not in dispute until the sentencing hearing and thus the court was required to provide notice. But here, unlike in *Sienkowski*, the issue arose at the sentencing hearing because of defendant's false testimony. Based on Sharp's answers on cross-examination, the government announced that it no longer intended to honor the plea agreement with respect to the recommended two-level reduction, or to file the § 3E1.1D motion to afford Sharp the additional one-level reduction for acceptance of responsibility. The government withdrew its motion at the sentencing hearing and argued against the previously agreed-to reduction because Sharp contested relevant conduct—namely, that he had sold approximately one kilogram of cocaine for the past year and a half—and did not truthfully admit his criminal conduct.

Sharp's actions caused both the government's reaction and the court's subsequent ruling. The court could not possibly have given advance notice of its intent to deny

the reduction for the simple reason that up until the hearing it had no such intent. The transcript of the sentencing hearing is replete with declarations of the court's surprise at the sudden turn of events; for instance, the court stated that he was "taken aback" by Sharp's change of heart. The court then anticipated the government's arguments on the issue by asking, "Is there a dispute about acceptance of responsibility?" Although Sharp now characterizes this question as improper because it was unprompted, the court only proposed the question after Sharp had testified and the government had played back the audiotaped conversation between Sharp and Detective Foster. The government played it back for the stated reason that the audiotaped conversation was "different in different respects from the answers he gave on the stand." Instead of raising the acceptance of responsibility issue *sua sponte*, then, the court merely anticipated the argument that the government pursued based on the evidence presented.

Thus, the situation in *Sienkowski* is distinguishable from the present matter. Instead of the court and the prosecution experiencing surprise at the defendant's testimony, in that case the defendant and the prosecution were "surprised by the district court's announcement." *Sienkowski*, 359 F.3d at 469. In *Sienkowski*, this Court specifically observed that its holding was "one of narrow applicability" and that "a variance in any of the other aforementioned factors would likely compel a different outcome." *Id.* at 470. Here, the fact that the surprise resulted from Sharp's changed testimony, and not from the district court's *sua sponte* action, is a distinction that compels a contrary result. The district court did not commit clear error.

### 2. Obstruction of Justice

Sharp next argues that the court was required to provide notice of its intent to adjust his sentence for obstruc-

tion of justice. A district court may increase a defendant's base offense level by two levels for obstruction of justice "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The increase only applies where the obstructive conduct related to "the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1(B)(I). One example of obstructive conduct is "providing materially false information to a judge or magistrate. . . ." U.S.S.G. § 3C1.1, cmt. n.4(f); *see also United States v. Carroll*, 346 F.3d 744, 748 (7th Cir. 2003). Sharp does not argue that the district court's decision to increase was unjustified; the only issue is whether the court was required to provide notice of its intention to increase.

Sharp argues that this Court's *Jackson* decision obligated the district court to provide notice of its intent to impose an obstruction of justice enhancement. In *Jackson*, this Court held that notice from the district court is required for sentencing adjustments unless the defendant is "aware of facts which may warrant an adjustment" and has "actual knowledge that those facts will be considered in sentencing." 32 F.3d at 1108. Sharp claims that this case is analogous to *Jackson* because at the sentencing hearing both parties anticipated arguing solely over another issue, not the one raised by the judge. There was, in Sharp's words, no "indication prior to the hearing that Mr. Sharp obstructed justice," just as there was no prior indication of the court's intention to consider an enhancement for abuse of position of trust in *Jackson*.

In *Jackson*, however, this Court carefully distinguished the defendant's case from several other cases, including *United States v. Willis*, 997 F.2d 407 (8th Cir. 1993). In *Willis*, the Eighth Circuit upheld a district court's *sua sponte* enhancement for obstruction of justice even though the PSR stated that no information indicated that

the defendant impeded justice. The sentencing court imposed the obstruction enhancement based on its finding that Willis had given perjured testimony at trial. Because Willis knew of "the potential bases for enhancement in the guidelines and the potential factual bases in the trial testimony," the court reasoned that Willis could not have been unfairly surprised by the district court's decision to consider the enhancement. This Court expressly stated that *Jackson* differed from *Willis* "because Jackson did not have knowledge of the facts giving rise to the sentencing enhancement," *id.* at 1108, whereas "Willis was obviously aware that he had given perjured testimony." *Id.* at 1107. The Court in *Jackson*, then, affirmed the authority of a district court to impose *sua sponte* an enhancement for obstruction of justice where the enhancement is predicated on the defendant's false testimony.

That is precisely what occurred here. The district court found that Sharp, through his sworn testimony at the sentencing hearing, was "attempting to minimize his involvement in a materially false way." Sharp was on notice that doing so could result in a possible obstruction of justice enhancement. The PSR contained no indication of that possibility for the logical reason that Sharp had cooperated with the government up until the sentencing hearing. The plea agreement that Sharp signed, however, expressly referenced that possibility: "Finally, my attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation officer, then USSG § 3C1.1 allows the Court to impose a two (2)-level increase in the offense level." Based on Sharp's undeniable awareness of his own false testimony and the actual knowledge provided by the plea agreement, it was not clear error for the district court to decline to give notice that an obstruction of justice enhancement could ensue.

### B. Unreasonableness of the Sentence

Sharp also challenges his sentence as unreasonable. In *United States v. Booker*, the Supreme Court held that the Sentencing Guidelines were no longer mandatory and that all sentences had to be reviewed for "unreasonableness." 125 S.Ct. 738, 765-67 (2005). Although the Sentencing Guidelines are now advisory, sentencing judges nevertheless must correctly compute the applicable sentencing range. Because the parties do not dispute that the court properly calculated the guideline range, this Court reviews the sentence for reasonableness. District courts must continue to consult the factors set forth in 18 U.S.C. § 3553(a), *see Booker*, 125 S.Ct. at 766, and a properly calculated sentence is entitled to a rebuttable presumption of reasonableness. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). This standard is deferential; a defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the § 3553(a) factors. *Id.* The district court must discuss those factors "not in checklist fashion but instead in the form of an adequate statement of the judge's reasons" for finding the sentence appropriate for that defendant. *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005).

When sentencing Sharp, the district judge expressly referenced several § 3553(a) factors. He examined the nature of the offense, finding Sharp's system of dealing to be "a very professionally run, reasonably high volume of distribution." He took note of Sharp's "very unusual background" as a 42-year-old first-time offender who had continuously been "well employed." In addition to the kinds of sentences available, the judge considered the applicable sentencing range established for Sharp's offense level. He thoroughly examined the need for the sentence imposed, touching on all relevant issues from affording adequate deterrence to providing Sharp with

needed training. The judge further focused on the need to avoid unwarranted sentence disparities, and noted that the sentence range of 235-293 months was merely "suggested by the Guidelines" and not mandatory. Finally, after deciding that all the § 3553(a) factors "would suggest that that sentence ought to be not at the top end of that range, but more close to the lower end of the range," the judge imposed a sentence of 235 months. Because the district court articulated a thorough rationale for the sentence consistent with the § 3553(a) factors, and because Sharp offered no evidence to rebut the presumption, the sentence was reasonable.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—2-1-06